UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FILED

2020 JAN -3 PM 5: 15

US BANKRUPTCY
DISTRICT OF SOUTH CAROLINA

In re:                                    )
                                          )      Case No. 19-05555-hb
                                          )
Michelle Yvette Hodges                    )      CHAPTER 13
                     Debtor               )
                                          )

---

### RESPONSE IN OPPOSITION TO WELLS FARGO'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN AND OBJECTION TO WELLS FARGO PROOF OF CLAIM

I, Michelle Hodges, the Debtor hereby respond in opposition to the Wells Fargo's objection to my Chapter 13 Plan.

1.  I believe that the objection to my chapter 13 is being done in bad faith, as the objection is not based the proper grounds for such kind of an objection and if the Wells wanted to be included in the Plan Payments is would submit a property proof of claim.

2.  To the extent that Wells Fargo may have presented a proof of claim to the court. I object, as Wells has not provided any supporting documents nor has the claim be presented on the proper form which breaks down the escrow from the loan and fees.

3.  Wells Fargo has not presented a claim that has not been objected to nor does Wells Fargo hold an enforceable claim or lien on my property located at 6 Young Harris Dr – Simpsonville, SC 29681.

4.  The reason that Wells Fargo does not hold an enforceable claim or lien on my home, is due to the fact that Wells Fargo unequivocally demonstrated that it no longer intended to perform its duties under the terms of the mortgage/contract, once it received all of the payments from the Hardest Hit Funds program, administered by SC Housing

Corporation, which put me in a position of no longer being required to perform my end of the bargain., under the Uniform Commerial Code for secured transactions (UCC) 2-610.

5. My mother, Ruth Witherspoon passed away on 7/5/15, shortly thereafter, I called SC Housing to inform them of my Mother's passing and that I still lived in the home, was not working and I inquired about the program and how they would handle this situation and the representative stated they would get back with me.

6. A few days later the SC housing representative called and advised me that they could continue the program, due to the fact that I am a relative and I live in the home. I then called Wells Fargo to advise them of the same and they requsted the Death Cert , Appointment of Personal Representative and Deed of Distribution. I sent what I had, the Death Cert and Appoint docs and advised the representative that when I had the Deed of Distribution, I would send it.

7. I certified to SC housing that I lived in the home and was looking for work, informed them when I did find work and Wells Fargo continued to pay my taxes and insurance as usual. The last payment from SC Housing was for the November 2016 payment.

8. So when Wells Fargo received the last payment from SC Housing they paid my property taxes at the non owner occupied rate of 6%, instead of the usual owner occupied rate, causing a fraudulent shortage in my escrow account.

9. In April 2017, Wells Fargo, informed me that I had an escrow shortage.

10. This shortage was created so that Wells Fargo could claim that my property was non owner occupied and this is turn would disqualify from home retention options under the FHA Hamp program and the States Order  by the South Carolina Supreme Court Administrative order #2011-05-02-01, which also requires that the home be owner

occupied. (and Wells Fargo was aware that it could not receive payments from SC Housing unless the property was owner occupied, as this was condition of the program and Wells Fargo was a signed participant of the program)

11. When Wells Fargo created the shortage it breached the Mortgage under laws of Respa, see item 2 page 3 first paragraph and exceeded the amount allowed by RESPA, which is $2099.10. under the code of federal regulation 12 CFR 1034.17(f) and law title 12 USC 2609 (Limitations on requirement of advance deposits in escrow accounts.)

12. When I applied for loss mitigation Wells Fargo did not make a proper determination of my status as a successor in interest per the promulgated rules of the Consumer Financial Protection Bureau.

13. This is in turn caused an inaccurate decision of my loan modification. The copy of the denial letter shows that Wells Fargo considered my income. When in fact the ability to repay is not triggered for a successor in interest. Nor under the HUD Waterfall regulations. Under the Waterfall regulations the Servicer is to reduce the unpaid principal balance to it reaches 31% of the debtors gross monthly income and this was not done.

14. When Well Fargo did not make an accurate determination of my loan modification it breached the Mortgage/Contract. Under item 9 d of page 5 of the Mortgage, it states that the security instrument does not authorized acceleration or foreclosure if not permitted by regulations of the Secretary. The Secretary of HUD requires accurate loss mitigation decision.

15. Therefore Wells Fargo breached the uniform covenants of the mortgage, it breached the consideration and bargains of the mortgage on all levels, therefore it repudiated the contract, putting me in a position of not having to perform my end of the bargain.

16. Wells Fargo stated in its reply to my reply to their motion for summary judgment in the foreclosure action case number 2017cp2308016; it stated that they qualified me under a simultaneous loan assumption an d modification and this does not apply in a successor in interest situation. (page 6 of the attached Federal registry first paragraph)

17. There is no dispute that the mortgage existed and the Mother is the original signer. There has been no retratction that I know of and now my situation has changed, my daughter no longer lives with me nor is she committing to help me with mortgage payments, as she previously did.

18. See documents  and Sources of information

(a)Mortgage shows contract existed

(b)Escrow Statement, shows Wells required me to pay more than requied under RESPA

(c)Mortgage Statements shows there was no escrow shortage, if Wells had paid my taxes at the property owner occupied rate, as is showing sufficient funds to cover the correct amount.

(d)Loan Decision

(e)Certification of non owner occupany (fraudulent claim that the property is non owner occupied)

(f) Federal Registry

Page 3 under Application of (ATR) ABILITY TO REPAY paragraph 4

Last sentence.

(g)Pay settlement statements, Wells Fargo had on file, verifying that the property was owner occupied,  which they choose to ignore.

(h) sources of laws

Respectfully submitted

Michelle Hodges

PO Box 95

Mauldin, Sc  29662

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: MICHELLE YVETTE HODGES | CASE NO: 19-0555-HB |
| (Set forth here all names including married, maiden, and trade names used by debtor within the last 8 years.) | CHAPTER:13 |
| DEBTOR(S) | NOTICE OF MOTION/APPLICATION AND OPPORTUNITY FOR HEARING |
| Address: PO Box 95 | |
| Mauldin, SC  29662 | |
| Last four digits of Social-Security or Individual Tax-Payer-Identification (ITIN) No(s)., (if any):   2040 | |

### NOTICE OF [OBJECTION TO] WELLS FARGO

Michelle Hodges has filed papers with the court to [relief sought for objection to creditor's claim

by Wells Fargo.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to [relief sought in motion or objection], or you want the court to consider your views on the [motion] [objection], then within (21____) days of service of this notice, you or your attorney must:

File with the court a written response, return, or objection at:

1100 Laurel Street
Columbia, SC 29201

Responses, returns, or objections filed by an attorney must be electronically filed in ecf.scb.uscourts.gov.

If you mail your response, return, or objection to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also send a copy to:n/a

Attend the hearing scheduled to be heard on (March 5), (2020), at 10:30 a.m./p.m. at the United States Bankruptcy Court, {address}.

If no response, return, and/or objection is timely filed and served, no hearing will be held on this [motion] [objection], except at the direction of the judge.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

| Date: 1/2/2020 | |
| --- | --- |
| | Signature of Attorney/*Pro Se* Debtor |
| | MICHELLE HODGES |
| | PO BOX 95, MAULIN, SC  29662<br>864-714-5263 |
| | District Court I.D. Number |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:
Michelle Yvette Hodges

CHAPTER 13
CASE No. 19-05555-hb

**AMENDED LIST OF CREDITORS**

CASH AMERICA PAWN
1600 West 7th Street
Fortworth, TX    ~~247-2559~~  76/02

Liberty Mutual Insurance
Billing Operations
100 Liberty Way
Dover, New Hampshire  03820

Guardian Protection Services
174 Thorn Hill Rd
Warrendale, PA  15086

HSN
1 HSN DR
St Petersburg, FL  33729

Greenville County Probate Court
301 University Ridge
Greenville, SC    29601

Watkin Garrett Woods
1011 Augusta St
Greenville, SC  29605

**Fill in this information to identify your case:**

| Debtor 1 | MICHELLE | YVETTE | HODGES |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of South Carolina

Case number    19-05555-hb
(If known)

☑ Check if this is a modified
plan, and list below the
sections of the plan that have
been changed.

☑    Pre-confirmation modification

☐    Post-confirmation modification

all sections modified

## District of South Carolina

# Chapter 13 Plan

5/19

---

**Part 1:    Notices**

**To Debtors:**    This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances.  Plans that do not comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, this Court's local rules, and judicial rulings may not be confirmable.

*In the following notice to creditors, you must check each box that applies.*

**To Creditors:**    **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.  Failure to object may constitute an implied acceptance of and consent to the relief requested in this document.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file a timely objection to confirmation.  **To determine the deadline to object to this plan, you must consult the Notice of Bankruptcy Case or applicable Notice/Motion served with this plan.**  The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015. In addition, pursuant to Federal Rule of Bankruptcy Procedure 3002, you must file a timely proof of claim in order to be paid under any plan.  Confirmation of this plan does not bar a party in interest from objecting to a claim.

The following matters may be of particular importance. *Debtors must check one box on each line to state whether or not the plan includes each of the following items.  If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☑ Included | ☐ Not included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4 | ☐ Included | ☑ Not included |
| 1.3 | Nonstandard provisions, set out in Part 8 | ☑ Included | ☐ Not included |
| 1.4 | Conduit Mortgage Payments: ongoing mortgage payments made by the trustee through plan, set out in Section 3.1(c) and in Part 8 | ☐ Included | ☑ Not included |

Debtor  MICHELLE              Y.    HODGES                          Case Number  19-05555-hb

---

**Part 2:**  **Plan Payments and Length of Plan**

2.1   The debtor submits to the supervision and control of the trustee all or such portion of future earnings or other future income as is necessary for the execution of the plan.

Unless all allowed claims (other than long-term claims) are fully paid pursuant to the plan, the debtor will make regular payments to the trustee as follows:

$ ~~120.~~ ⁰⁰  per month    for   36___  months

[and $ —_____ per month    for   —___  months.]

*Insert additional lines if needed.*

The debtor and trustee may stipulate to a higher payment in order to provide adequate funding of the plan without the necessity of a modification to the plan.  The stipulation is effective upon filing with the Court.

Additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

2.2   **Regular payments to the trustee will be made from future income in the following manner:**

*Check all that apply.*

❏   The debtor will make payments pursuant to a payroll deduction order.

☑   The debtor will make payments directly to the trustee.

❏   Other (specify method of payment):_____.

2.3   **Income tax refunds.**

*Check one.*

☑   The debtor will retain any income tax refunds received during the plan term.

❏   The debtor will treat income tax refunds as follows:

I need to retain my 2019 tax refund, via a wild card exemption 15-41-30(A)(7).  To get a headstone for my Mother's grave, pay HOA dues in full annually,need powered lawn mower and for landscaping, the reel mower that I use is taking a toll; brakes and tires for the Kia or a down payment on a new car; need washer machine mine is completely rusted on the brink of breakdown

2.4   **Additional payments.**

*Check one.*

☑   **None.** *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

❏   The debtor will make additional payment(s) to the trustee from other sources, as specified below. Describe the source, estimated amount, and date of each anticipated payment.

---

**Part 3:**  **Treatment of Secured Claims**

To receive a distribution from the trustee, a proof of claim, including adequate supporting documentation and filed in compliance with Official Rules and Forms, must be filed with the Court. For purposes of plan distribution, a claim shall be treated as provided for in a confirmed plan. However, if a claim is treated as secured in a confirmed plan and the affected creditor elects to file an unsecured claim, such claim, unless timely amended, shall be treated as unsecured for purposes of plan distribution.   Any creditor holding a claim secured by property that is removed from the protection of the automatic stay by order, surrender, or through operation of the plan will receive no further distribution from the chapter 13 trustee on account of any secured claim. This provision also applies to creditors who may claim an interest in, or lien on, property that is removed from the protection of the automatic stay by another lienholder or released to another lienholder, unless the Court orders otherwise, but does not apply if the sole reason for its application arises under 11 U.S.C. § 362(c)(3) or (c)(4).  Any funds that would have otherwise been paid to a creditor, but pursuant to these provisions will not be paid, shall be distributed according to the remaining terms of the plan.  Any creditor affected by these provisions and who has filed a timely proof of claim may file an itemized proof of claim for any unsecured deficiency within a reasonable time after the removal of the property from the protection of the automatic stay.  Secured creditors that will be paid directly by the debtor may continue sending standard payment and escrow notices, payment coupons, or inquiries about insurance, and such action will not be considered a violation of the automatic stay.

District of South Carolina
Effective May 1, 2019                           Chapter 13 Plan                                     Page 2

Debtor MICHELLE _____ Y. ___ HODGES _____        Case Number 19-05555-hb _____

**3.1  Maintenance of payments and cure or waiver of default, if any.**

*Check all that apply.  Only relevant sections need to be reproduced.*

❑ None. *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

☑ **3.1(a)**  The debtor is not in default and will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules.  These payments will be disbursed directly by the debtor.

| Name of Creditor | Collateral |
|---|---|
| AMERICA CASH PAWN | 2 Rings |

*Insert additional claims as needed.*

❑ **3.1(b)** The debtor is in default and will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules.  The arrearage payments will be disbursed by the trustee, with interest, if any, at the rate stated.  The trustee shall pay the arrearage as stated in the creditor's allowed claim or as otherwise ordered by the Court.

| Name of Creditor | Collateral | Estimated amount of arrearage | Interest rate on arrearage (if applicable) | Monthly plan payment on arrearage |
|---|---|---|---|---|
| _____ | _____ | $_____ Includes amounts accrued through the Month/Year  payment] | _____% | $_____ (or more) |

*Insert additional claims as needed.*

❑ **3.1(c)** The debtor elects to make post-petition mortgage payments to the trustee for payment through the Chapter 13 Plan in accordance with the Operating Order of the Judge assigned to this case and as provided in Section 8.1.  In the event of a conflict between this document and the Operating Order, the terms of the Operating Order control.

❑ **3.1(d)**  The debtor proposes to engage in loss mitigation efforts with _____ according to the applicable guidelines or procedures of the Judge assigned to this case.  Refer to section 8.1 for any nonstandard provisions, if applicable.

*Insert additional claims as needed.*

☑ **3.1(e)  Other.**  A secured claim is treated as set forth in section 8.1.  This provision will be effective only if the applicable box in Section 1.3 of this plan is checked and a treatment is provided in Section 8.1.

**3.2  Request for valuation of security and modification of undersecured claims.** *Check one.*

❑ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

**The remainder of this paragraph will be effective only if the applicable box in Part 1 of this plan is checked.**

☑ The debtor requests that the Court determine the value of the secured claims listed below. For each non-governmental secured claim listed below, the debtor states that the value of the secured claim should be as set out in the column headed *Estimated amount of secured claim.*  For secured claims of governmental units, unless otherwise ordered by the Court after motion or claims objection filed after the governmental unit files its proof of claim or after the time for filing one has expired, the value of a secured claim listed in a proof of claim filed in accordance with the Bankruptcy Rules controls over any contrary amount listed below. For each listed claim, the value of the secured claim will be paid in full with interest at the rate stated below.

The portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5.1 of this plan. If the estimated amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5.1 of this plan. Unless otherwise ordered by the Court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph.

Debtor MICHELLE         Y.  HODGES                    Case Number 19-05555-hb

Unless 11 U.S.C. § 1325(a)(5)(A) or (C) applies, holders of secured claims shall retain liens to the extent provided by section 1325(a)(5)(B)(i). Unless there is a non-filing co-debtor who continues to owe an obligation secured by the lien, any secured creditor paid the allowed secured claim provided for by this plan shall release its liens at the earliest of the time required by applicable state law, order of this Court, or thirty (30) days from the entry of the discharge.

| Name of creditor | Estimated amount of creditor's total claim | Collateral | Value of collateral | Amount of claims senior to creditor's claim | Estimated amount of secured claim | Interest rate | Estimated monthly payment to creditor (disbursed by the trustee) |
|---|---|---|---|---|---|---|---|
| ALLY FINAN. | $ 8575.00 | KIA FORTE | $ 2500 | $ 0 | $ 0 | 0  % | $_____ (or more) |

*Insert additional claims as needed.*

*Already completely pays for car*

**3.3 Other secured claims excluded from 11 U.S.C. § 506 and not otherwise addressed herein.**

*Check one.*

☑  **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

☐  The claims listed below are being paid in full without valuation or lien avoidance.

These claims will be paid in full under the plan with interest at the rate stated below. These payments will be disbursed either by the trustee or directly by the debtor, as specified below.   Unless there is a non-filing co-debtor who continues to owe an obligation secured by the lien, any secured creditor paid the allowed secured claim provided for by this plan shall satisfy its liens at the earliest of the time required by applicable state law, order of this Court, or upon completion of the payment of its allowed secured claim in this case.

| Name of creditor | Collateral | Estimated amount of claim | Interest rate | Estimated monthly payment to creditor |
|---|---|---|---|---|
| _____ | _____ | $_____ | _____% | $_____ (or more) |

Disbursed by
☐ Trustee

☐ Debtor

*Insert additional claims as needed.*

**3.4 Lien avoidance.**

*Check one.*

☑  **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*
**The remainder of this paragraph will be effective only if the applicable box in Part 1 of this plan is checked.**

☐  The judicial liens or nonpossessory, nonpurchase money security interests securing the claims listed below impair exemptions to which the debtor would have been entitled under 11 U.S.C. § 522(b). Unless otherwise ordered by the Court, a judicial lien or security interest securing a claim listed below will be avoided to the extent that it impairs such exemptions upon entry of the order confirming the plan. The amount of the judicial lien or security interest that is avoided will be treated as an unsecured claim in Part 5.1 to the extent allowed. The amount, if any, of the judicial lien or security interest that is not avoided will be paid in full as a secured claim under the plan. See 11 U.S.C. § 522(f) and Bankruptcy Rule 4003(d). *If more than one lien is to be avoided, provide the information separately for each lien.*

*Choose the appropriate form for lien avoidance.*

| Name of creditor and description of property securing lien | Estimated amount of lien | Total of all senior/unavoidable liens | Applicable Exemption and Code Section | Value of debtor's interest in property | Amount of lien not avoided (to be paid in 3.2 above) | Amount of lien avoided |
|---|---|---|---|---|---|---|
| _____ | $_____ | $_____ | _____ | $_____ | $_____ | $_____ |

Debtor MICHELLE        Y.    HODGES                    Case Number 19-05555-hb

*Use this form for avoidance of liens on co-owned property only.*

| Name of creditor and description of property securing lien | Total equity (value of debtor's property less senior/unavoidable liens) | Debtor's equity (Total equity multiplied by debtor's proportional interest in property) | Applicable Exemption and Code Section | Non-exempt equity (Debtor's equity less exemption) | Estimated lien | Amount of lien not avoided (to be paid in 3.2 above) | Amount of lien avoided |
|---|---|---|---|---|---|---|---|
| _____ | $_____ | $_____ | _____ | $_____ | $_____ | $_____ | $_____ |

*Insert additional claims as needed.*

**3.5  Surrender of collateral.**

*Check one.*

☐ **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*

☑ The debtor elects to surrender the collateral that secures the claim of the creditor listed below. The debtor requests that upon confirmation of this plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under § 1301 be terminated in all respects. A copy of this plan must be served on all co-debtors. Any creditor who has filed a timely proof of claim may file an amended proof of claim itemizing the deficiency resulting from the disposition of the collateral within a reasonable time after the surrender of the property. Any such amended claim, if allowed, will be treated in Part 5.1 below.

| Name of creditor | Collateral |
|---|---|
| Car Max Financial | 2013 Nissan |

*Insert additional claims as needed.*

---

**Part 4:  Treatment of Fees and Priority Claims**

**4.1  General**

The debtor shall pay all post-petition priority obligations, including but not limited to taxes and post-petition domestic support, and pay regular payments on assumed executory contracts or leases, directly to the holder of the claim as the obligations come due, unless otherwise ordered by the Court. Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in § 4.5, will be paid in full without postpetition interest.

**4.2  Trustee's fees**

Trustee's fees are governed by statute and may change during the course of the case.

**4.3  Attorney's fees**

a.  The debtor and the debtor's attorney have agreed to an attorney's fee for the services identified in the Rule 2016(b) disclosure statement filed in this case. Fees entitled to be paid through the plan and any supplemental fees as approved by the Court shall be disbursed by the trustee as follows: Following confirmation of the plan and unless the Court orders otherwise, the trustee shall disburse a dollar amount consistent with the Judge's guidelines to the attorney from the initial disbursement. Thereafter, the balance of the attorney's compensation as allowed by the Court shall be paid, to the extent then due, with all funds remaining each month after payment of trustee fees, allowed secured claims and pre-petition arrearages on domestic support obligations. In instances where an attorney assumes representation in a pending *pro se* case and a plan is confirmed, a separate order may be entered by the Court, without further notice, which allows for the payment of a portion of the attorney's fees in advance of payments to creditors.

b.  If, as an alternative to the above treatment, the debtor's attorney has received a retainer and cost advance and agreed to file fee applications for compensation and expenses in this case pursuant to 11 U.S.C. § 330, the retainer and cost advance shall be held in trust until fees and expense reimbursements are approved by the Court. Prior to the filing of this case, the attorney has received $_____ and for plan confirmation purposes only, the fees and expenses of counsel are estimated at $_____ or less.

**4.4  Priority claims other than attorney's fees and those treated in § 4.5.**

The trustee shall pay all allowed pre-petition 11 U.S.C. § 507 priority claims, other than domestic support obligations treated below, on a *pro rata* basis. If funds are available, the trustee is authorized to pay any allowed priority claim without further amendment of the plan.

Debtor MICHELLE          Y.    HODGES               Case Number 19-05555-hb

*Check box below if there is a Domestic Support Obligation.*

☐ **Domestic Support Claims.** 11 U.S.C. § 507(a)(1):

    a.   Pre-petition arrearages. The trustee shall pay the pre-petition domestic support obligation arrearage to N/A_____ (state name of DSO recipient) , at the rate of $ N/A_____ or more per month until the balance, without interest, is paid in full. *Add additional creditors as needed.*

    b.   The debtor shall pay all post-petition domestic support obligations as defined in 11 U.S.C. § 101(14A) on a timely basis directly to the creditor.

    c.   Any party entitled to collect child support or alimony under applicable non-bankruptcy law may collect those obligations from property that is not property of the estate or with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute.

**4.5 Domestic support obligations assigned or owed to a governmental unit and paid less than full amount.**

    *Check one.*

    ☑ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

    ☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4). *This plan provision requires that payments in § 2.1 be for a term of 60 months; see 11 U.S.C. § 1322(a)(4).*

| Name of creditor | Amount of claim to be paid |
|---|---|
| _____ | $ _____ |
| | Disbursed by |
| | ☐ Trustee |
| | ☐ Debtor |

*Insert additional claims as needed.*

**Part 5:**   **Treatment of Nonpriority Unsecured Claims**

**5.1 Nonpriority unsecured claims not separately classified.** *Check one.*

    Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata by the trustee to the extent that funds are available after payment of all other allowed claims.

    ☑ The debtor estimates payments of less than 100% of claims.
    ☐ The debtor proposes payment of 100% of claims.
    ☐ The debtor proposes payment of 100% of claims plus interest at the rate of ___%.

**5.2 Maintenance of payments and cure of any default on nonpriority unsecured claims.** *Check one.*

    ☑ **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*

    ☐ The debtor will maintain the contractual installment payments and cure, through the trustee, any prepetition default in payments on the unsecured claims listed below.

| Name of creditor | Current installment payment (paid by the debtor) | Estimated amount of arrearage through month of filing or conversion | Monthly payment on arrearage to be disbursed by the trustee |
|---|---|---|---|
| *SEE Attached Plan Treatment* | $ | $ | $ |
| | | | (or more) |

*Insert additional claims as needed.*

Debtor MICHELLE        Y.   HODGES                    Case Number 19-05555-hb

☐   **Other.**   The debtor is proposing a non-standard provision for vesting, which is set forth in section 8.1. This provision will be effective only if the applicable box in Section 1.3 of this plan is checked and a proposal for vesting is provided in Section 8.1.

---

**Part 8:**   **Nonstandard Plan Provisions**

**8.1  Check "None" or List Nonstandard Plan Provisions**

☐ **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below.  A nonstandard provision is a provision not otherwise included in this form or deviating from it.  Nonstandard provisions set out elsewhere in this plan are ineffective.*

**The following plan provisions will be effective only if there is a check in the box "Included" in § 1.3.**

SECURED DEBTS ARE TREATED AS FOLLOWS
Wells Fargo claims 1st Mortgage on 6 Young Harris Dr and is disputed and my position is that I do not owe them
Alley Financial secures 2016 Kia Forte and is disputed  and my position is that I have already paid for the car
Adversary proceedings against Wells Fargo and Alley Financial/Kia of Greenville will take place in this court
Nelnet will continue with (IBR) program
All others will be treated as no less than chapter 7 (except if lawsuits yield settlements , claims will be reexamined)
Unsecured - LNVN Funding is disputed and objected to, due to statute of limitations

---

**Part 9:**   **Signature(s)**

**9.1  Signatures of the debtor and the debtor's attorney**

*The debtor and the attorney for the debtor, if any, must sign below.*

✖ _Michelle Hodges_ ✖ _____
  Signature of Debtor 1                              Signature of Debtor 2

Executed on _12/23/19_    Executed on _____
    MM / DD / YYYY                      MM /DD / YYYY

✖ _____        Date  _____
  Signature of Attorney for the debtor    DCID #        MM/DD/ YYYY

By filing this document, the debtor, if not represented by an attorney, or the debtor and the attorney for the debtor certify(ies) that this Chapter 13 plan contains no nonstandard provision other than those set out in Part 8.

District of South Carolina
Effective May 1, 2019                Chapter 13 Plan                Page 8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:  MICELLE YVETTE HODGES

CASE NO 19-05555-hb
CHAPTER 13

## CERTIFICATE OF SERVICE

I hereby certify that I served the following Creditors a copy of the Notice of Bankruptcy,
Amended Bankruptcy Plan, Objection to Proof of Claim and a Notice of Hearing, via Certified
mail.

ALLY FINANCIAL -
P.O. BOX 380901
BLOOMINGTON, MN 55438

Wells Fargo Bank  acct #0412780801
PO BOX 10335
DES MOINES, IA  50306

CASH AMERICA PAWN
1600 West 7th Street
Fortworth, TX  247-2559

Liberty Mutual Insurance
Billing Operations
100 Liberty Way
Dover, New Hampshire  03820

Guardian Protection Services
174 Thorn Hill Rd
Warrendale, PA  15086

HSN
1 HSN DR
St Petersburg, FL  33729

Greenville County Probate Court
301 University Ridge
Greenville, SC

Watkin Garrett Woods
1011 Augusta St
Greenville, SC  29605

LVNV FUNDING
Resurgent Capital
PO Box 10587
Greenville, SC  29603

Michelle Hodges 1/2/2020

Return To:

2012025003  MTG
13 PGS
March 29, 2012  03.16.31 PM  Book MO 5155  Page.5354-5365
Rec $19 00  Cnty Tax $0 00
State Tax $0 00
**FILED IN GREENVILLE COUNTY,SC**

Prepared By:
**Brittany Binnie**
**10706 Sikes Place**
**Suite 350**
**Charlotte, NC 28277**

MAY 0 2 2019

DATE _____
CERTIFIED TO BE A TRUE AND CORRECT COPY
OF DOCUMENT ON FILE IN THIS OFFICE

REGISTER OF DEEDS, GREENVILLE COUNTY

―――――――――――――――|Space Above This Line For Recording Data|――――――――

**State of South Carolina**

# MORTGAGE

| FHA Case No |
| --- |
| **461-5472518-703** |

MIN 100027611110903219

THIS MORTGAGE ("Security Instrument") is given on **March 28, 2012**
The Mortgagor is **Ruth Witherspoon**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **NVR Mortgage Finance, Inc. Lic. 1127**

("Lender") is organized and existing under the laws of **The State of Virginia**                      , and has an address of **121 Hillpointe Dr., Suite 100, Canonsburg, PA 15317**
. Borrower owes Lender the principal sum of
**One Hundred Fifty Eight Thousand Four Hundred Fourteen And Zero/100**
Dollars (U.S. $ **158,414.00**                ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 01, 2042**
. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and

1111090321                                                                        1111090321
FHA South Carolina Mortgage with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(SC) (0409) 01          Amended 2/01
Page 1 of 9                    Initials R. W.

assigns), and to the successors and assigns of MERS the following described property located in **Greenville**                                               County, South Carolina:

Parcel ID Number:
which has the address of **6 Young Harris Dr**                                    [Street]
**Simpsonville**                         [City], South Carolina **29681**          [Zip Code]
("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns), and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures

**1111090321**

VMP®-4N(SC) (0409) 01                    Page 2 of 9                    Initials: ____  **1111090321**

Act of 1974, 12 U.S.C. Section 2601 *et seq* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant

1111090321

1111090321

Initials x R.W.

or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

1111090321

VMP®-4N(SC) (0409) 01                    Page 4 of 9

Initials ✗ _R. W._              2111090321

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

1111090321

VMP®-4N(SC) (0409) 01                    Page 5 of 9                    Initials  R.W.    1111090321

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

1111090321

VMP®-4N(SC) (0409) 01                    Page 6 of 9

1111090321

Initials _R.W._

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property.

**21. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to one hundred fifty percent (150%) of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| ☐ Condominium Rider | ☐ Growing Equity Rider | ☐ Other [specify] |
|---|---|---|
| ☒ Planned Unit Development Rider | ☐ Graduated Payment Rider | |

1111090321

VMP®-4N(SC) (0409) 01                    Page 7 of 9

1111090321
Initials x _R.W._

NMLS Unique Identifier 1127 / 260097

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Ruth Witherspoon_____ (Seal)
                                      Ruth Witherspoon                -Borrower

_____    _____ (Seal)
                                                                      -Borrower

_____(Seal)      _____ (Seal)
                         -Borrower                                    -Borrower

_____(Seal)      _____ (Seal)
                         -Borrower                                    -Borrower

_____(Seal)      _____ (Seal)
                         -Borrower                                    -Borrower

STATE OF SOUTH CAROLINA, Greenville

I,   J. Nathan Galbreath

Ruth Witherspoon

County ss:

do hereby certify that

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this **28th**       day of **March, 2012**

Notary Public for South Carolina

```
J. NATHAN GALBREATH
Notary Public, South Carolina
My Commission Expires
February 15, 2018
```

My Commission Expires:  **2|15|2018**

1111090321
VMP®-4N(SC) (0409) 01                Page 9 of 9                Initials X R.W.    1111090321

NMLS Unique Identifier 1127 / 260097

Case 19-05555-hb    Doc 33    Filed 01/03/20    Entered 01/06/20 09:22:51    Desc Main
1/3/2020          Federal Register :: Application of Regulation Z's Ability-to-Repay Rule to Certain Situations Involving Successors-in-Interest
Document Page 26 of 45

as of 01/03/2020 at 10:15 am EST

DOCUMENT STATISTICS

PUBLISHED DOCUMENT

🗋

🗋 Start Printed
Page 41631

# AGENCY:

Bureau of Consumer Financial Protection.

# ACTION:

Final rule.

# SUMMARY:

The Bureau of Consumer Financial Protection (Bureau) is issuing this interpretive rule to clarify that the Bureau's Ability-to-Repay Rule incorporates the existing definition of "assumption" under Regulation Z.

# DATES:

This clarification is effective July 17, 2014 and applicable beginning July 8, 2014.

# FOR FURTHER INFORMATION CONTACT:

William R. Corbett, Senior Counsel, Office of Regulations, Consumer Financial Protection Bureau, 1700 G Street NW., at (202) 435-7700.

# SUPPLEMENTARY INFORMATION:

## I. Background

The Bureau is issuing this interpretive rule to clarify that where a successor-in-interest (successor) who has previously acquired title to a dwelling agrees to be added as obligor or substituted for the existing obligor on a consumer credit transaction secured by that dwelling, the creditor's written acknowledgement of the successor as obligor is not subject to the Bureau's Ability-to-Repay Rule (ATR Rule), § 1026.43, because such a transaction does not constitute an assumption as defined by Regulation Z § 1026.20(b).[1]

In the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203 (https://api.fdsys.gov/link?collection=plaw&congress=111&lawtype=public&lawnum=203&link-type=html), 124 Stat. 1376 (2010), (Dodd-Frank Act), Congress established the Bureau and generally consolidated the rulemaking authority for Federal consumer financial laws, including the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act, in the Bureau, effective July 21, 2011.[2] Historically, Regulation Z, which was issued by the Board of Governors of the Federal Reserve System (Board), 12 CFR part 226 (/select-citation/2016/12/08/12-CFR-226), had implemented TILA. On December 22, 2011, pursuant to the Dodd-Frank Act and TILA, as amended by the Dodd-Frank Act, the Bureau published an interim final rule establishing a new Regulation Z (Truth in Lending), 12 CFR part 1026 (/select-citation/2016/12/08/12-CFR-1026), implementing TILA (except with respect to persons excluded from the Bureau's rulemaking authority by section 1029 of the Dodd-Frank Act). The interim final rule substantially duplicated the Board's Regulation Z, as it existed at that time, making only non-substantive, technical, formatting, and stylistic changes.

Beginning January 10, 2013, the Bureau issued several final rules implementing amendments to TILA under the Dodd-Frank Act (the Title XIV Final Rules), including the ATR Rule.[3] On February 13, 2013, the Bureau announced an initiative to support implementation of its new mortgage rules,[4] under which the Bureau would work with the mortgage industry and other stakeholders to ensure that the new rules could be implemented accurately and expeditiously.

Since the issuance of the Title XIV Final Rules, industry and consumer advocates have expressed uncertainty about the application of the ATR Rule in situations where a successor seeks to be added as an obligor or substituted for the current obligor on an existing mortgage. The Bureau has been asked whether the creditor is obligated under the ATR Rule to determine the successor's ability to repay the mortgage before formally adding the successor as an obligor. Often, this issue arises upon the death of the obligor, with the surviving spouse or children asserting rights under the mortgage, but it may also present itself in other settings, such as in separation or divorce, after a transfer from living parents to children, or a transfer to an inter vivos trust of which the consumer is the beneficiary. If the ATR Rule applies when a creditor adds a successor as an obligor, such transactions may be less likely to occur. There can be significant consequences for a successor that is not able to become an obligor on a mortgage. For instance, if the

successor seeks a modification of the existing transaction as part of trying to retain the home, the creditor may refuse to modify the terms of the debt on the grounds that the successor is not a party to the existing obligation and therefore cannot enter into a modification agreement.[5]

🗋                                                                                                🗋 Start Printed
                                                                                                   Page 41632

In general, as discussed in part II below, in these situations, where the addition or substitution of the successor as the obligor is not an "assumption" under § 1026.20(b), such addition or substitution is not subject to the ATR Rule's requirements. A creditor may rely on this interpretation as a safe harbor under section 130(f) of TILA. The Bureau plans to incorporate this interpretation into Regulation Z's Official Interpretations at a later date.

The Bureau is aware of other questions related to a servicer's obligations with respect to successors. Under Regulation X § 1024.38(b)(1)(vi), servicers are required to maintain policies and procedures reasonably designed to ensure the servicer can promptly identify and facilitate communication with the successor-in-interest of a deceased borrower upon notification of the death of the borrower. On October 15, 2013, the Bureau issued a guidance bulletin providing examples of servicer practices the Bureau would consider to be components of the policies and procedures mortgage servicers must have in place to comply with these requirements regarding successors-in-interest. [6] The Bureau is monitoring these issues to determine whether they require further guidance or rulemaking.

# II. Application of ATR to Certain Situations Involving Successors-in-Interest



The Bureau has received many questions regarding the applicability of the ATR Rule where a successor acquires a home that is the collateral for an existing consumer credit transaction and seeks to become an obligor on that transaction. A successor is a person who receives legal interest in a property, typically by a transfer from a family member, by operation of law upon another's death, or under a divorce decree or separation agreement.[7] In all of these situations, where the successor acquires property that is subject to a mortgage, the successor is not personally liable for the associated debt, but may choose to assume the debt. The Garn–St Germain Depository Institutions Act of 1982 prohibits the creditor from exercising a due-on-sale clause based upon certain types of transfers, including the common situation of transfer upon death of a relative.[8] Even where a due-on-sale clause may be exercised, however, creditors may agree to add the successor as a named obligor under the loan contract.

## A. Application of the ATR Rule to a Change in Obligors

Under Regulation Z § 1026.43, the ATR Rule applies to any "covered transaction" defined, with certain enumerated exceptions, as "any consumer credit transaction that is secured by a dwelling . . . including any real property attached to a dwelling." Under § 1026.43(c), a creditor must make a reasonable and good faith determination that the consumer has the ability to repay at or before consummation of the covered transaction. Similarly, Regulation Z generally requires creditors to provide disclosures required under § 1026.18 or § 1026.19 to consumers before consummation of certain closed-end loans. In certain circumstances, however, creditors and consumers agree, *after* consummation, to changes to an existing transaction that are treated as a "new transaction" under Regulation Z, requiring new disclosures. Section 1026.20(a) and (b) provide that if a creditor and consumer engage in activity that constitutes a "refinancing" or an "assumption," the creditor must make new disclosures. Comment 43(a)-1 is consistent with this approach in excluding from the scope of § 1026.43 changes to the loan that are not a refinancing under § 1026.20(a).



The terms "refinancing" and "assumption" are each assigned a specific meaning in § 1026.20(a) and (b). These terms generally define when a change in a closed-end loan's terms or obligors constitutes a new transaction under Regulation Z. For example, under § 1026.20(a), a refinancing occurs when an existing obligation is "satisfied and replaced by a new obligation undertaken by the same consumer." Certain changes to the loan's terms, including, generally, workout agreements for delinquent borrowers, do *not* meet the definition of a "refinancing," under § 1026.20(a). *See* § 1026.20(a)(4); comment 20(a)(4)-1. As comment 43(a)-1 makes explicit, such agreements are therefore not covered transactions and are not subject to § 1026.43.

Section 1026.20(a) and (b) address different types of events. Section 1026.20(a) addresses changes to a loan's terms—such as an increase in the interest rate in a transaction initially disclosed as a fixed-rate transaction. In contrast, § 1026.20(b) applies to changes in the loan's obligors. Under § 1026.20(b) an assumption occurs when—and only when—the creditor "expressly agrees in writing with a subsequent consumer to accept that consumer as a primary obligor on an existing residential mortgage transaction."

The Bureau believes that just as comment 43(a)-1 explicitly incorporates the definition of "refinancing" in § 1026.20(a)—and the limitations on that definition—into the scope of § 1026.43, so, too, the ATR requirement in § 1026.43 should be interpreted to incorporate the existing Regulation Z standard for transactions involving a change of obligors set forth in § 1026.20(b). Unless the change satisfies the definition of an "assumption" under § 1026.20(b), a change of obligors does not trigger the ATR requirements under § 1026.43.

The Bureau's interpretation is consistent with comment 43(a)-1 and consistent with the Bureau's purposes in issuing the Ability-to-Repay Rule. This interpretation applies a standard to transactions that involve new obligors that is consistent with the standard that exists in Regulation Z generally. The Bureau believes it would be potentially incongruous to interpret § 1026.43 as *never* applying to transactions involving a new obligor, which by definition are excluded from being refinancings under § 1026.20(a). The Bureau also believes that interpreting § 1026.43 as either never applying to transactions with new obligors or as applying

to transactions with new obligors based on a standard other than the familiar rule set forth in § 1026.20(b) would not be consistent with the policies underlying the ATR Rule, the Bureau's intent in promulgating the rule, or the public's understanding of Regulation Z.

## B. The Addition of a Successor as Named Obligor Generally Does not Constitute an "Assumption"



As noted above, § 1026.43 should be interpreted to incorporate the existing standards under § 1026.20(b) for determining whether a transaction is an "assumption." An assumption under § 1026.20(b) occurs when the creditor agrees in writing to accept a subsequent consumer as a primary obligor on an existing "residential mortgage transaction." A "residential mortgage transaction" is a transaction in which a consumer finances the acquisition or initial construction of the consumer's principal dwelling. See § 1026.2(a)(24). For purposes of determining whether a transaction is an "assumption," the creditor must look to whether the new obligor is seeking to finance the acquisition of that subsequent consumer's principal dwelling.[9] Whether the existing extension of consumer credit was a residential mortgage transaction as to the existing primary obligor is immaterial.

☐ Start Printed
Page 41633

A residential mortgage transaction does not arise where a successor takes on the debt obligation that is secured by property the successor previously acquired.[10] In these situations, § 1026.20(b) does not apply when the successor agrees to be added as an obligor on an existing mortgage loan. Although these transactions are commonly referred to as assumptions, they are not assumptions under § 1026.20(b) because the transaction is not a residential mortgage transaction as to the successor. Accordingly, the ATR Rule in § 1026.43 does not apply to a transaction in which a successor seeks to take on the debt secured by property that the successor previously acquired.

In contrast to the successor situation described above, if a consumer without an existing interest takes on the obligation of the existing borrower in order to finance the acquisition of the consumer's principal dwelling, the transaction is a residential mortgage transaction. In such a case, where the creditor expressly agrees in writing to the new primary obligor, an assumption under § 1026.20(b), and it is subject to the ability-to-repay requirements in § 1026.43, in addition to other requirements of Regulation Z. Moreover, where a creditor adds a successor as the obligor, whether that event is subject to § 1026.43 or not, the extension of credit remains a consumer credit transaction under Regulation Z. The creditor, assignee, or servicer must comply with any ongoing obligations pertaining to the extension of consumer credit, such as the requirement to provide monthly statements in § 1026.41 and the requirement to notify the obligors of adjustments to the loan's interest rate in § 1026.20(c) and (d).

# III. Regulatory Requirements

This rule articulates the Bureau's interpretation of Regulation Z, and the Truth-in-Lending Act. It is therefore exempt from the APA's notice and comment rulemaking requirements pursuant to 5 U.S.C. 553 (https://api.fdsys.gov/link?collection=uscode&title=5&year=mostrecent&section=553&type=usc&link-type=html)(b).

Because no notice of proposed rulemaking is required, the Regulatory Flexibility Act does not require an initial or final regulatory flexibility analysis. 5 U.S.C. 603 (https://api.fdsys.gov/link?collection=uscode&title=5&year=mostrecent&section=603&type=usc&link-type=html)(a), 604(a).

The Bureau has determined that this rule does not impose any new or revise any existing recordkeeping, reporting, or disclosure requirements on covered entities or members of the public that would be collections of information requiring OMB approval under the Paperwork Reduction Act, 44 U.S.C. 3501 (https://api.fdsys.gov/link?collection=uscode&title=44&year=mostrecent&section=3501&type=usc&link-type=html), et seq.

Dated: July 1, 2014.

Richard Cordray,

Director, Bureau of Consumer Financial Protection.

# Footnotes

1. This interpretive rule refers generally to "creditors." Under Regulation Z the term "creditor" generally means the one to whom the obligation is initially payable. See § 1026.2(a)17. Where a mortgage has been sold after consummation, the original "creditor" may no longer be in position to agree to add an obligor. When evaluating whether acknowledging a new obligor triggers the requirements of § 1026.20(b) or § 1026.43, servicers and assignees of the original obligation may rely on this interpretive rule.
Back to Citation

*2. See, e.g., sections 1011 and 1021 of the Dodd-Frank Act, 12 U.S.C. 5491 (https://api.fdsys.gov/link?
collection=uscode&title=12&year=mostrecent&section=5491&type=usc&link-type=html) and 5511
(establishing and setting forth the purpose, objectives, and functions of the Bureau); section 1061 of the
Dodd-Frank Act, 12 U.S.C. 5581 (https://api.fdsys.gov/link?
collection=uscode&title=12&year=mostrecent&section=5581&type=usc&link-type=html) (consolidating
certain rulemaking authority for Federal consumer financial laws in the Bureau); section 1100A of the Dodd-
Frank Act (codified in scattered sections of 15 U.S.C.) (similarly consolidating certain rulemaking authority in
the Bureau). But see section 1029 of the Dodd-Frank Act, 12 U.S.C. 5519 (https://api.fdsys.gov/link?
collection=uscode&title=12&year=mostrecent&section=5519&type=usc&link-type=html) (subject to certain
exceptions, excluding from the Bureau's authority any rulemaking authority over a motor vehicle dealer that
is predominantly engaged in the sale and servicing of motor vehicles, the leasing and servicing of motor
vehicles, or both).*
Back to Citation

*3. On January 10, 2013, the Bureau issued the January 2013 ATR Final Rule. 78 FR 6407 (/citation/78-FR-
6407) (Jan. 30, 2013). That same day the Bureau issued the 2013 Escrows Final Rule, and the 2013
HOEPA Final Rule. 78 FR 4725 (/citation/78-FR-4725) (Jan. 22, 2013); 78 FR 6855 (/citation/78-FR-6855)
(Jan. 31, 2013). On January 17, 2013, the Bureau issued the 2013 Mortgage Servicing Final Rules. 78 FR
10695 (/citation/78-FR-10695) (Feb. 14, 2013); 78 FR 10901 (/citation/78-FR-10901) (Feb. 14, 2013). On
January 18, 2013, the Bureau issued the 2013 ECOA Valuations Final Rule and, jointly with other agencies,
the 2013 Interagency Appraisals Final Rule. 78 FR 7215 (/citation/78-FR-7215) (Jan. 31, 2013); 78 FR
10367 (/citation/78-FR-10367) (Feb. 13, 2013). On January 20, 2013, the Bureau issued the 2013 Loan
Originator Final Rule. 78 FR 11279 (/citation/78-FR-11279) (Feb. 15, 2013). Pursuant to the Dodd-Frank Act,
which permitted a maximum of one year for implementation, most of these rules became effective on
January 10, 2014.*
Back to Citation

*4. Press Release, Consumer Financial Protection Bureau, CFPB Lays Out Implementation Plan for New
Mortgage Rules (Feb. 13, 2013), available at http://www.consumerfinance.gov/newsroom/consumer-
financial-protection-bureau-lays-out-implementation-plan-for-new-mortgage-rules/
(http://www.consumerfinance.gov/newsroom/consumer-financial-protection-bureau-lays-out-implementation-
plan-for-new-mortgage-rules/).*
Back to Citation

*5. As discussed in part II below, most workout agreements are not "refinancings" subject to the ATR Rule.
However, creditors generally require a successor to enter into an assumption agreement prior to or
simultaneous with the execution of the modification agreement in part because creditors are concerned
about their ability to enforce the terms of the modified debt absent a written agreement, executed by an
obligor with authority.*
Back to Citation

*6. CFPB Bulletin, 2013-12 (Oct. 15, 2013), http://files.consumerfinance.gov/f/201310_cfpb_mortgage-
servicing_bulletin.pdf (http://files.consumerfinance.gov/f/201310_cfpb_mortgage-servicing_bulletin.pdf).*
Back to Citation

*7. The term successor also may include an inter vivos trust, created by a borrower who transfers his or her
property into the trust in which the obligor is or remains a beneficiary.*
Back to Citation

*8. See 12 U.S.C.1701j-3(d).*
Back to Citation

*9. Comment 20(b)-2 states that creditors "must look to the assuming consumer in determining whether a
residential mortgage transaction exists." (emphasis added.)*
Back to Citation

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

## Application of Regulation Z's Ability-To-Repay Rule to Certain Situations Involving Successors-in-Interest

A Rule by the                                        on

## DOCUMENT DETAILS

**Printed version:**
PDF (https://www.govinfo.gov/content/pkg/FR-2014-07-17/pdf/2014-16780.pdf)

**Publication Date:**
07/17/2014 (/documents/2014/07/17)

**Agency:**
Bureau of Consumer Financial Protection (https://www.federalregister.gov/agencies/consumer-financial-protection-bureau)

**Dates:**
This clarification is effective July 17, 2014 and applicable beginning July 8, 2014.

**Effective Date:**
07/17/2014

**Document Type:**
Rule

**Document Citation:**
79 FR 41631

**Page:**
41631-41633 (3 pages)

**CFR:**
12 CFR 1026

**Agency/Docket Number:**
Docket No. CFPB-2014-0016

**RIN:**
3170-ZA00

**Document Number:**
2014-16780

DOCUMENT DETAILS

## DOCUMENT STATISTICS

**Page views:**
6,267

*Exhibit A*

*Legal Description*

ALL that certain piece, parcel or lot of land situate, lying and being in the State of South
Carolina, County of Greenville, being shown and designated as *Lot 83 of TWIN CREEKS,*
*PHASE II, SHEET 1 OF 2,* on plat thereof, prepared by Landmark Surveying, Inc. dated
February 12, 2007 and recorded March 22, 2007 in the Register of Deeds Office for Greenville
County, SC in Plat Book 1034, page 19, and more recently shown on plat prepared by Landmark
Surveying, Inc., entitled "Closing Survey for Ruth Witherspoon" dated March14, 2012 and
recorded herewith in the Register of Deeds Office for Greenville County, SC in Plat Book 1135
at Page 12. Reference to said latter plat is hereby made for a more complete metes and
bounds description thereof.

This being the same property conveyed unto the mortgagor herein by deed from *NVR, Inc.*
of even date to be recorded herewith.



Date: September 08, 2017

| Account Information | |
|---|---|
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | P.O. Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon – Thurs, 7 a.m. – 9 p.m., |
| | Fri, 7 a.m. – 8 p.m., |
| | Sat, 8 a.m. - 4 p.m. CT |
| Loan Number: | 0412780801 |
| Property Address: | 6 YOUNG HARRIS DR |
| | SIMPSONVILLE, SC 29681 |

Subject: Your request for assistance

We service your mortgage in accordance to FHA's guidelines.

Dear MICHELLE HODGES:

We're responding to your request for assistance and the options that may be available to help you. We realize that the process can take some time, and we appreciate your patience while we review your options.

**Here's what we found**
We carefully reviewed the information you provided us, which included a process that compared your information to the qualifications for assistance associated with your loan.  Here is the result of that review.

Program Name: FHA HAMP Loan Modification

Program Description:
This program modifies the existing terms of the loan. To qualify, FHA product guidelines must be met.

At this time, you do not meet the requirements of this program because:

 Based on the documentation you provided, we are unable to create an affordable mortgage payment that still meets the requirements of the program. We reached this decision by reviewing your monthly gross income, which is calculated as $1,953.00 , along with reviewing the other information you provided. Your gross monthly income is your income before taxes and other deductions.

Once we determined that you did not meet the requirements for a particular program, we did not continue to evaluate that program based on other criteria related to your loan type or information you may have supplied. Instead we moved to evaluate you for the next available program based on your information and the qualifications associated with your loan.

If you believe our decision on your eligibility for assistance is incorrect, you can appeal within 20 calendar days from the date of this letter. You can follow the instructions outlined in the enclosed Appeal Request Form.

**Talk to me about your other options**
We have options available to help you avoid a foreclosure. You are eligible for a short sale and deed in lieu of foreclosure provided you meet the requirements.

If the amount you owe on your mortgage is higher than what you think you can sell your house for, you may want to consider what is known as a "short sale." This option could allow you to list your home for sale, for an amount that is less than you owe.

During the short sale process, you'll need to submit documentation to us that we will evaluate. For example, a short sale requires a purchase contract. Once we receive a purchase contract Wells Fargo Home Mortgage will review the terms of the contract and obtain the appraised value of the property.

If you are interested in a short sale, contact me right away. I can help explain the short sale process, guidelines and your eligibility.

If you are unable to sell your home or find a short sale is not the right alternative to foreclosure for you, another option to consider might be a deed in lieu of foreclosure, sometimes referred to as a Mortgage Release. If you are interested in a deed in lieu of foreclosure, please contact me right away so we can determine your eligibility and coordinate an appraisal and inspection of your property.

Keep in mind, if you accept a deed in lieu of foreclosure, you must agree to vacate the property within an agreed upon time.

**The loan may be included in a Single Family Loan Sale**
It is possible that the loan may be included in a Single Family Loan Sale by FHA. This means that FHA may sell the loan to an investor, and the servicer of the loan may change.
Note that foreclosure may happen if any of these events occur:
- If you can't qualify for a mortgage assistance program.
- If you aren't able to meet the terms of any mortgage assistance programs. (If, for example, you didn't make your mortgage payments on time.)
- If your mortgage assistance program is denied.
- If you didn't respond to our request for information and can't be considered for a mortgage assistance program.
Also note that there may be limitations to foreclosure if the loan is in bankruptcy.

**We're here for you**
If you have any questions about the information in this letter please call me at the phone number listed below.

Sincerely,

AXL QUINN
Home Preservation Specialist
Wells Fargo Home Mortgage
Ph: 844-422-0853  ext: 1335523495
Fax: 1-866-590-8910

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include your account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure. Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid

foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage America's Servicing Company.

Where appropriate Wells Fargo Home Mortgage America's Servicing Company is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20006.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

HP601 ML

DCSF1CDTHB  029572DCSF1C0000003891 2936

ESTATE OF RUTH WITHERSPOON
C/O MICHELLE HODGES
6 YOUNG HARRIS DR
SIMPSONVILLE, SC 29681-0095

Des Moines IA 50306

☑ **Payments**
PO Box 660278
Dallas TX 75266

**Hours of operation**
Mon - Fri 6 a.m. - 10 p.m.
Sat 8 a.m. - 2 p.m. CT

**Purchase or refinance**
1-866-867-3026

We accept telecommunications relay service calls.

## Payment summary

| | |
|---|---|
| Principal | $282.38 |
| Interest | $451.26 |
| Escrow | $324.26 |
| **Current payment** | **$1,057.90** |
| **Total payment due** 11/01/16 | **$1,057.90** |
| After 11/16/16 a late charge may apply | **$42.32** |

## Balance summary

| | |
|---|---|
| **Unpaid principal balance** | **$144,402.66** |
| Escrow balance | $1,066.49 |
| *(Contact Customer Service for your payoff balance)* | |
| Interest rate | 3.750% |
| Maturity date | 04/42 |

## Year-to-date summary

| | |
|---|---|
| Total received* | $9,293.98 |
| Principal | $2,502.17 |
| Interest** | $4,100.59 |
| Escrow | $2,691.22 |
| Insurance disbursed | $901.00 |

*This total may include the Unapplied funds balance from the Balance summary section.
**This information should not be used for tax purposes. If you have tax related questions, please consult your tax advisor.

## Activity since your last statement

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 09/06 | Payment | $1,057.90 | $281.50 | $452.14 | $324.26 | |
| 09/02 | Mtg ins payment | | | | -$137.14 | HUD RISK-BASED |

## Important messages

**Your mortgage payment has been subsidized for you**
Since you are participating in your state's Hardest Hit Fund program, the mortgage payment shown on this statement has been subsidized by your state on your behalf.

---

*Please detach and return with your payment*

ESTATE OF RUTH WITHERSPOON
C/O MICHELLE HODGES
6 YOUNG HARRIS DR
SIMPSONVILLE, SC 29681

*Check here and see reverse for address correction.*

**Loan number**
0412780801
**Current payment due**
$1,057.90
**Total payment due 11/01/16**
$1,057.90
**After 11/16/16 a late charge may apply**
$42.32

*Please specify additional funds*

| | | |
|---|---|---|
| Payment x pmt amt | A | $ |
| Additional principal | B | $ |
| Late charges | C | $ |
| Other charges | D | $ |
| Additional escrow | | |

WELLS FARGO HOME MORTGAGE



**WELLS FARGO HOME MORTGAGE**

Return Mail Operations
PO Box 14547
Des Moines, IA 50306-4547

Escrow Review Statement

Statement Date: April 5, 2017
Loan number: 0412780801
Property address:
6 YOUNG HARRIS DR
SIMPSONVILLE SC 29681

ESTATE OF RUTH WITHERSPOON
C/O MICHELLE HODGES
6 YOUNG HARRIS DR
SIMPSONVILLE SC 29681-0095

**Customer Service**

Online
wellsfargo.com

Correspondence
PO Box 10335
Des Moines, IA 50306

To learn more, go to:
wellsfargo.com/escrow

Telephone
1-800-340-0473

Hours of operation
Mon - Fri 6 a.m. - 10 p.m.
Sat 8 a.m. - 2 p.m. CT

We accept telecommunications relay service calls

**Why are you receiving this Escrow Review Statement?**
Because the amounts billed for your escrow items can change over time, we review your escrow account to ensure there will be enough money to make these payments. Once the review is complete, we send you an escrow review statement, also known as the escrow account disclosure statement.

Here's what we found:

- **Required minimum balance:** Your escrow account balance is projected to fall below the required minimum balance. This means you have a **shortage**.

- **Future payments:** Based on what we expect to pay the escrow portion of the payment will **increase**. Your loan is delinquent. Please do not adjust your payment amount until you pay the June 1, 2017 payment.

> Your escrow account has a shortage of
> **$3,249.95**

## Part 1 - Mortgage payment

### Option 1    Pay the shortage amount over 12 months

| | Current payment | New payment |
|---|---|---|
| Principal and/or interest | $733.64 | $733.64 |
| Escrow payment | $324.26 | $747.99 |
| Total payment amount | $1,057.90 | $1,481.63 |

**Option 1: No action required**

Starting **June 1, 2017** your new mortgage payment amount will be **$1,481.63**

### Option 2    Pay the shortage amount of $3,249.95

| | Current payment | New payment |
|---|---|---|
| Principal and/or interest | $733.64 | $733.64 |
| Escrow payment | $324.26 | $477.16 |
| Total payment amount | $1,057.90 | $1,210.80 |

**Option 2: Pay shortage in full**

Starting **June 1, 2017** your new mortgage payment amount will be **$1,210.80**

**Note:** If you have an adjustable rate mortgage (ARM), a separate notice will be sent before your payment is scheduled to change.

See Page 2 for additional details.



**WELLS FARGO HOME MORTGAGE**

ESTATE OF RUTH WITHERSPOON

Wells Fargo Home Mortgage
PO Box 660278
Dallas, TX 75266-0278

Your escrow account review indicates a shortage. You may choose **Option 2** to pay the shortage in full by Jun 01, 2017 and your new mortgage payment will be **$1,210.80**.

Please detach this coupon and mail it along with your check for $3,249.95 to the address that appears on this coupon.

936 0412780801 9 10 02 00105790 00121080 00430785 00324995 7

## Part 2 - Payment calculations

For the past review period, the amount of your escrow items was $5,627.86. For the coming year, we expect the amount paid from escrow to be $5,725.88.

### How was the escrow payment calculated?

To determine the escrow payment, we add the projected escrow items to be paid over the next 12 months. We base these projected amounts on any escrow items that may have been paid in the past and any future anticipated payments to be made. We then divide the total amount by 12 payments to determine the escrow amount.

The chart below includes any actual escrow disbursements as well as any shortage that may have been identified for the past three analysis periods.

### Escrow comparison

| | 09/14 - 08/15 (Actual) | 09/15 - 08/16 (Actual) | 06/16 - 04/17 (Actual) | 06/17 - 05/18 (Projected) | | # of months | | New monthly escrow amount |
|---|---|---|---|---|---|---|---|---|
| Property taxes | $646.51 | $778.38 | $2,983.32 | $2,983.32 | ÷ | 12 | = | $248.61 |
| Property insurance | $666.00 | $901.00 | $1,136.00 | $1,136.00 | ÷ | 12 | = | $94.67 |
| Total taxes and insurance | $1,312.51 | $1,679.38 | $4,119.32 | $4,119.32 | ÷ | 12 | = | $343.28 |
| Escrow shortage | $84.90 | $213.67 | $566.03 | $3,249.95 | ÷ | 12 | = | $270.83** |
| Mortgage insurance | $1,707.72 | $1,670.88 | $1,508.54 | $1,606.56 | ÷ | 12 | = | $133.88 |
| Total escrow | $3,105.13 | $3,563.93 | $6,193.89 | $8,975.83 | ÷ | 12 | = | $747.99 |

**This amount is added to your payment if you choose Option 1 on page 1.

### Projected escrow account activity over the next 12 months

To determine if there will be a shortage or overage in your account, we calculate whether the amount of your lowest projected escrow balance will be greater or less than your required minimum balance. This is determined by subtracting your required minimum balance from your lowest projected balance. If the outcome is positive, you have an overage. If it is negative, you have a shortage. Your calculation is below:

| | | |
|---|---|---|
| Lowest projected escrow balance  March, 2018 | -$2,563.39 | (Calculated in Part 3 - Escrow account projections table) |
| Minimum balance for the escrow account¹  - | $686.56 | (Calculated as: $343.28 X 2 months) |
| Escrow shortage  = | -$3,249.95 | |

¹Your minimum balance includes a cash reserve to help cover any increase in taxes and/or insurance. To calculate the cash reserve for your escrow account, we add up the total of your yearly escrow payments, and divide by 12 (this amount does not include mortgage insurance). We take this amount and multiply it by 2 as allowed by state laws and/or the mortgage contract to determine the cash reserve.

### Important messages

Wells Fargo is changing the way we handle escrow overage/surplus amounts. Previously, checks were sent to refund overages $50.00 or greater, while lesser amounts simply reduced a future payment. As of June 1, 2016, checks will be sent for all refunds, regardless of amount. To learn more about escrow accounts, visit wellsfargo.com/escrow.

Page 3 of 3
Loan Number: 0412780801

## Part 3 - Escrow account projections

Escrow account projections from June, 2017 to May, 2018

| Date | Payments to escrow | What we expect to pay out | Description | Projected escrow balance | Balance required in the account |
|---|---|---|---|---|---|
| May 2017 | | | Starting balance | -$1,876.87 | $1,373.08 |
| Jun 2017 | $477.16 | $133.88 | FHA Insurance | -$1,533.59 | $1,716.36 |
| Jul 2017 | $477.16 | $133.88 | FHA Insurance | -$1,190.31 | $2,059.64 |
| Aug 2017 | $477.16 | $133.88 | FHA Insurance | -$847.03 | $2,402.92 |
| Sep 2017 | $477.16 | $133.88 | FHA Insurance | -$503.75 | $2,746.20 |
| Oct 2017 | $477.16 | $133.88 | FHA Insurance | -$160.47 | $3,089.48 |
| Nov 2017 | $477.16 | $133.88 | FHA Insurance | $182.81 | $3,432.76 |
| Dec 2017 | $477.16 | $133.88 | FHA Insurance | $526.09 | $3,776.04 |
| Dec 2017 | $0.00 | $2,983.32 | GREENVILLE COUNTY | -$2,457.23 | $792.72 |
| Jan 2018 | $477.16 | $133.88 | FHA Insurance | -$2,113.95 | $1,136.00 |
| Feb 2018 | $477.16 | $133.88 | FHA Insurance | -$1,770.67 | $1,479.28 |
| Mar 2018 | $477.16 | $133.88 | FHA Insurance | -$1,427.39 | $1,822.56 |
| Mar 2018 | $0.00 | $1,136.00 | HARTFORD CASUALTY | -$2,563.39 | $686.56 |
| Apr 2018 | $477.16 | $133.88 | FHA Insurance | -$2,220.11 | $1,029.84 |
| May 2018 | $477.16 | $133.88 | FHA Insurance | -$1,876.83 | $1,373.12 |
| Totals | $5,725.92 | $5,725.88 | | | |

## Part 4 - Escrow account history

Escrow account activity from June, 2016 to May, 2017

| Date | Deposits to escrow | | | Payments from escrow | | | Description | Escrow balance | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Actual | Projected | Difference | Actual | Projected | Difference | | Actual | Projected | Difference |
| Jun 2016 | | | | | | | Starting Balance | $318.01 | $559.78 | -$241.77 |
| Jun 2016 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $642.27 | $699.73 | -$57.46 |
| Jun 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $505.13 | $699.73 | -$194.60 |
| Jul 2016 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $829.39 | $839.68 | -$10.29 |
| Jul 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $692.25 | $839.68 | -$147.43 |
| Aug 2016 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $1,016.51 | $979.63 | $36.88 |
| Aug 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $879.37 | $979.63 | -$100.26 |
| Sep 2016 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $1,203.63 | $1,119.58 | $84.05 |
| Sep 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $1,066.49 | $1,119.58 | -$53.09 |
| Oct 2016 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $1,390.75 | $1,259.53 | $131.22 |
| Oct 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $1,253.61 | $1,259.53 | -$5.92 |
| Nov 2016 | $0.00 | $277.09 | -$277.09 | $0.00 | $137.14 | -$137.14 | FHA Insurance | $1,253.61 | $1,399.48 | -$145.87 |
| Nov 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | $1,116.47 | $1,399.48 | -$283.01 |
| Nov 2016 | $0.00 | $0.00 | $0.00 | $2,983.32 | $0.00 | $2,983.32 | GREENVILLE COUNTY | -$1,866.85 | $1,399.48 | -$3,266.33 |
| Dec 2016 | $0.00 | $277.09 | -$277.09 | $0.00 | $137.14 | -$137.14 | FHA Insurance | -$1,866.85 | $1,539.43 | -$3,406.28 |
| Dec 2016 | $0.00 | $0.00 | $0.00 | $0.00 | $778.38 | -$778.38 | GREENVILLE COUNTY | -$1,866.85 | $761.05 | -$2,627.90 |
| Dec 2016 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | -$2,003.99 | $761.05 | -$2,765.04 |
| Jan 2017 | $0.00 | $277.09 | -$277.09 | $0.00 | $137.14 | -$137.14 | FHA Insurance | -$2,003.99 | $901.00 | -$2,904.99 |
| Jan 2017 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | -$2,141.13 | $901.00 | -$3,042.13 |
| Feb 2017 | $648.52 | $277.09 | $371.43 | $0.00 | $137.14 | -$137.14 | FHA Insurance | -$1,492.61 | $1,040.95 | -$2,533.56 |
| Feb 2017 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | -$1,629.75 | $1,040.95 | -$2,670.70 |
| Mar 2017 | $324.26 | $277.09 | $47.17 | $0.00 | $137.14 | -$137.14 | FHA Insurance | -$1,305.49 | $1,180.90 | -$2,486.39 |
| Mar 2017 | $0.00 | $0.00 | $0.00 | $1,136.00 | $901.00 | $235.00 | HARTFORD CASUALTY | -$2,441.49 | $279.90 | -$2,721.39 |
| Mar 2017 | $0.00 | $0.00 | $0.00 | $137.14 | $0.00 | $137.14 | FHA Insurance | -$2,578.63 | $279.90 | -$2,858.53 |
| Apr 2017 (estimate) | $648.52 | $277.09 | $371.43 | $137.14 | $137.14 | $0.00 | FHA Insurance | -$2,067.25 | $419.85 | -$2,487.10 |
| May 2017 (estimate) | $324.26 | $277.09 | $47.17 | $133.88 | $137.14 | -$3.26 | FHA Insurance | -$1,876.87 | $559.80 | -$2,436.67 |
| Totals | $3,566.86 | $3,325.08 | $241.78 | $5,761.74 | $3,325.06 | $2,436.68 | | | | |

*Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2016 Wells Fargo Bank, N.A. All rights reserved.*
*NMLSR ID 399801 9/16*



ELECTRONICALLY FILED - 2018 Jan 02 4:06 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2308016

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

Wells Fargo Bank, NA ,

        Plaintiff,

v.

Michelle Hodges, Individually ; Michelle Hodges,
as Personal Representative of the Estate of Ruth
Ladson Witherspoon ; Stanley Witherspoon ; SC
Housing Corp.; Twin Creeks Homeowners
Association, Inc. ;

        Defendant(s).

IN THE COURT OF COMMON PLEAS

DOCKET NO. 2017CP2308016

CERTIFICATE OF NON-OWNER
OCCUPANCY DUE TO DEATH OF
MORTGAGOR
Deficiency Judgment Waived

(013263-10210)

        The undersigned attorney for the Plaintiff has been informed and is of the belief that the
Mortgagor, as defined by South Carolina Supreme Court Administrative Order 2011-05-02-01("the
Order"), is deceased, and as such, the loan is not eligible for foreclosure intervention as contemplated by
the Order.

/s/ Jason D. Wyman
Rogers Townsend & Thomas, PC
ATTORNEYS FOR PLAINTIFF
Robert P. Davis (SC Bar #74030), Robert.Davis@rtt-law.com
Andrew W. Montgomery (SC Bar #79893), Andrew.Montgomery@rtt-law.com
John J. Hearn (SC Bar # 6635), John.Hearn@rtt-law.com
Kevin T. Brown (SC Bar # 064236), Kevin.Brown@rtt-law.com
Jason D. Wyman (SC Bar # 100271), Jason.Wyman@rtt-law.com
John P. Fetner (SC Bar# 77460), John.Fetner@rtt-law.com
Clark Dawson (SC Bar# 101714), Clark.Dawson@rtt-law.com

100 Executive Center Drive, Suite 201    Post Office Box 100200(29202)
Columbia, SC 29210    (803) 744-4444

Columbia, South Carolina
January 2, 2018

Δ π EXHIBIT  12
Deponent
Date      Rptr.
WWW.DEPOBOOK.COM

ELECTRONICALLY FILED - 2018 Jan 02 4:06 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2308016

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

Wells Fargo Bank, NA ,

                Plaintiff,

v.

Michelle Hodges, Individually ; Michelle Hodges,
as Personal Representative of the Estate of Ruth
Ladson Witherspoon ; Stanley Witherspoon ; SC
Housing Corp.; Twin Creeks Homeowners
Association, Inc. ;

                Defendant(s).

IN THE COURT OF COMMON PLEAS

DOCKET NO. 2017CP2308016

CERTIFICATE OF MAILING

(013263-10210)

      Pursuant to the South Carolina Supreme Court Administrative Order 2011-05-02-01 the undersigned, says that he/she mailed a copy of the Certificate of Non-Owner Occupancy Due to Death of Mortgagor in the above-referenced foreclosure action upon the owner(s), mortgagor(s) and/or debtor(s) by placing a copy of the Certificate of Non-Owner Occupancy Due to Death of Mortgagor in the United States Mail, postage paid, to be mailed to the said Defendant(s) at the following addresses this _2nd_ day of January, 2018:

The Estate of Ruth Witherspoon
6 Young Harris Dr
Simpsonville, SC 29681

                                 David Baker
                                 Andrew R. Smith

# Pay Statement



back   print   help

Things I Can Do

This is a statement of earnings and deductions. This pay statement is non-negotiable.

FOR THIS TAB SET

Add Direct Deposit 11/10/2016

Add/Change Withholding Form (W-4)

**Carolinas**
AAA Car Care Centers, LLC.
6600 AAA Drive
Charlotte, NC 28212

| | |
|---|---|
| Pay Statement | |
| Period Start Date | 10/30/2016 |
| Period End Date | 11/05/2016 |
| Pay Date | 11/10/2016 |
| Document | Quick Tours |
| Net Pay | $328.36 |

Quick Tours and Tips

Pay Section Overview

Add a Direct Deposit Account Tour

View Your Form W-2 Tour

## Pay Details

| Michelle Y Hodges | Employee Number | 66181 | Pay Group | Car Care Centers | Federal Income Tax | S8 |
|---|---|---|---|---|---|---|
| 6 Young Harris Drive | SSN | xxxxxxxx | | | SC State Income Tax (Residence) | S8 |
| Simpsonville, SC 29681 | Job | CCC-Porter | Location | South Carolina | SC State Income Tax (Work) | S8 |
| USA | Pay Rate | $10.00 | Rpt | AMPLEA - AM- | | |
| | Pay Frequency | Weekly | Location | Pleasantburg-450 | | |
| | | | Department | INDRCT - AM - Indirect Labor | | |
| | | | CO | CCC - CCC (AutoMark) | | |
| | | | Region | CCCHQ - CCC Region | | |

## Earnings

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| CCC Training | 0.0000 | $0.0000 | $0.00 | $80.00 |
| CCC Holiday | 0.0000 | $0.0000 | $0.00 | $180.00 |
| Overtime | 0.0000 | $0.0000 | $0.00 | $67.50 |
| Regular | 40.0000 | $10.0000 | $400.00 | $7,000.00 |
| Total Hours | 40.0000 | | | |

## Deductions

| Deduction | Pre-Tax | Current | YTD |
|---|---|---|---|
| CCC 401k | Yes | $12.00 | $219.21 |
| Child Life Insu | No | $0.46 | $4.60 |
| Dental | Yes | $5.70 | $57.00 |
| Off the Job Acc | No | $5.14 | $51.40 |
| OpEmpLife | No | $2.03 | $20.30 |
| Uniform Deposit | No | $7.50 | $142.50 |
| Uniform Rental | No | $5.35 | $101.65 |
| Vision | Yes | $3.57 | $35.70 |

### Taxes

| Taxes | Current | YTD |
|---|---|---|
| Employee Medicare | $5.66 | $104.61 |
| SC State Income Tax | $0.00 | $0.71 |
| Social Security Employee Tax | $24.23 | $447.32 |

## Paid Time Off

## Net Pay Distribution

| Account Number | Account Type | Amou |
|---|---|---|
| xxxxxx6719 | Checking | $328. |
| Total | | $328. |

Debtor MICHELLE                Y.    HODGES                    Case Number 19-05555-hb

*Check box below if there is a Domestic Support Obligation.*

☐ **Domestic Support Claims.** 11 U.S.C. § 507(a)(1):

   a.   Pre-petition arrearages. The trustee shall pay the pre-petition domestic support obligation arrearage to  N/A            (state name of DSO recipient) , at the rate of $ N/A        or more per month until the balance, without interest, is paid in full.  *Add additional creditors as needed.*

   b.   The debtor shall pay all post-petition domestic support obligations as defined in 11 U.S.C. § 101(14A) on a timely basis directly to the creditor.

   c.   Any party entitled to collect child support or alimony under applicable non-bankruptcy law may collect those obligations from property that is not property of the estate or with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute.

**4.5   Domestic support obligations assigned or owed to a governmental unit and paid less than full amount.**

   *Check one.*

   ☑ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

   ☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim under 11 U.S.C. § 1322(a)(4).  *This plan provision requires that payments in § 2.1 be for a term of 60 months; see 11 U.S.C. § 1322(a)(4).*

| Name of creditor | Amount of claim to be paid |
|---|---|
| _____ | $ _____ |
| | Disbursed by |
| | ☐ Trustee |
| | ☐ Debtor |

*Insert additional claims as needed.*

---

**Part 5:   Treatment of Nonpriority Unsecured Claims**

**5.1   Nonpriority unsecured claims not separately classified.** *Check one.*

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata by the trustee to the extent that funds are available after payment of all other allowed claims.

☑ The debtor estimates payments of less than 100% of claims.

☐ The debtor proposes payment of 100% of claims.

☐ The debtor proposes payment of 100% of claims plus interest at the rate of ___%.

**5.2   Maintenance of payments and cure of any default on nonpriority unsecured claims.** *Check one.*

   ☑ **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*

   ☒ The debtor will maintain the contractual installment payments and cure, through the trustee, any prepetition default in payments on the unsecured claims listed below.

| Name of creditor | Current installment payment (paid by the debtor) | Estimated amount of arrearage through month of filing or conversion | Monthly payment on arrearage to be disbursed by the trustee |
|---|---|---|---|
| *SEE Attached Plan Treatment* | $ | $ | $ |
| | | | (or more) |

*Insert additional claims as needed.*

Debtor MICHELLE          Y.   HODGES                                    Case Number 19-05555-hb

☐    **Other.**  The debtor is proposing a non-standard provision for vesting, which is set forth in section 8.1.  This provision will be effective only if the applicable box in Section 1.3 of this plan is checked and a proposal for vesting is provided in Section 8.1.

**Part 8:**  **Nonstandard Plan Provisions**

**8.1  Check "None" or List Nonstandard Plan Provisions**

☐ **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below.  A nonstandard provision is a provision not otherwise included in this form or deviating from it.  Nonstandard provisions set out elsewhere in this plan are ineffective.*

**The following plan provisions will be effective only if there is a check in the box "Included" in § 1.3.**

SECURED DEBTS ARE TREATED AS FOLLOWS
Wells Fargo claims 1st Mortgage on 6 Young Harris Dr and is disputed and my position is that I do not owe them
Alley Financial secures 2016 Kia Forte and is disputed  and my position is that I have already paid for the car
Adversary proceedings against Wells Fargo and Alley Financial/Kia of Greenville will take place in this court
Nelnet will continue with (IBR) program
All others will be treated as no less than chapter 7 (except if lawsuits yield settlements , claims will be reexamined)
Unsecured - LNVN Funding is disputed and objected to, due to statute of limitations

**Part 9:**  **Signature(s)**

**9.1  Signatures of the debtor and the debtor's attorney**

*The debtor and the attorney for the debtor, if any, must sign below.*

✗ _Michelle Hodges_          ✗ _____
  Signature of Debtor 1                              Signature of Debtor 2

Executed on _12/23/19_     Executed on _____
            MM / DD / YYYY                  MM /DD / YYYY

✗ _____          Date _____
  Signature of Attorney for the debtor    DCID #         MM/DD/ YYYY

By filing this document, the debtor, if not represented by an attorney, or the debtor and the attorney for the debtor certify(ies) that this Chapter 13 plan contains no nonstandard provision other than those set out in Part 8.

District of South Carolina
Effective May 1, 2019                    Chapter 13 Plan                    Page 8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:  MICELLE YVETTE HODGES

CASE NO  19-05555-hb
CHAPTER 13

CERTIFICATE OF SERVICE

I hereby certify that I served the following Creditors a copy of the Notice of Bankruptcy, Amended Bankruptcy Plan, Objection to Proof of Claim and a Notice of Hearing, via Certified mail.

ALLY FINANCIAL  -
P.O. BOX 380901
BLOOMINGTON, MN 55438

Wells Fargo Bank  acct #0412780801
PO BOX 10335
DES MOINES, IA  50306

CASH AMERICA PAWN
1600 West 7th Street
Fortworth, TX  247-2559

Liberty Mutual Insurance
Billing Operations
100 Liberty Way
Dover, New Hampshire  03820

Guardian Protection Services
174 Thorn Hill Rd
Warrendale, PA  15086

HSN
1 HSN DR
St Petersburg, FL  33729

Greenville County Probate Court
301 University Ridge
Greenville, SC

Watkin Garrett Woods
1011 Augusta St
Greenville, SC  29605

LVNV FUNDING
Resurgent Capital
PO Box 10587
Greenville, SC  29603

Michelle Hodges 1/2/2020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:  MICELLE YVETTE HODGES

CASE NO  19-05555-hb
CHAPTER 13

CERTIFICATE OF SERVICE

I hereby certify that I served the following Creditors a copy of the Notice of Bankruptcy, Amended Bankruptcy Plan, Objection to Proof of Claim and a Notice of Hearing, via Certified mail.

ALLY FINANCIAL -
P.O. BOX 380901
BLOOMINGTON, MN 55438

LVNV FUNDING
Resurgent Capital
PO Box 10587
Greenville, SC  29603

Wells Fargo Bank   acct #0412780801
PO BOX 10335
DES MOINES, IA  50306

CASH AMERICA PAWN
1600 West 7th Street
Fortworth, TX  247-2559

Liberty Mutual Insurance
Billing Operations
100 Liberty Way
Dover, New Hampshire  03820

Guardian Protection Services
174 Thorn Hill Rd
Warrendale, PA  15086

HSN
1 HSN DR
St Petersburg, FL  33729

Greenville County Probate Court
301 University Ridge
Greenville, SC

Watkin Garrett Woods
1011 Augusta St
Greenville, SC  29605

Michelle Hodges 1/2/2020